UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 05-CV-0932 (JFB)

———————

Romel Shuler,

Petitioner,

versus

Eliot Spitzer, Attorney General of New York, and
William Phillips, Superintendent of Green Haven Correctional Facility,

Respondents.

———————

MEMORANDUM AND ORDER
June 13, 2007

———————

Joseph F. Bianco, District Judge:

Romel Shuler (hereinafter, "petitioner" or "Shuler") seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. As set forth below, because he failed to commence this proceeding within the one-year period of limitations, as required by 28 U.S.C. § 2244(d)(1), the petition is dismissed. In any event, even assuming *arguendo* that the petition were timely, it is without merit for the reasons set forth *infra*.

I. Background

A. Facts

The following facts are adduced from the instant petition and underlying record.

1. The Underlying Crime

On February 27, 1991, shortly before 10:00 p.m., petitioner was inside the lobby of 30 Debevoise Avenue, in Brooklyn, New York. (Trial Transcript (hereinafter "Tr.") at 25.) He was accompanied by Walter Bell ("Bell"), Walter Williams ("Williams"), Alan Smith ("Smith") and Clyde Daniels ("Daniels"). (Tr. 264.) Alvin Hart ("Hart") entered the lobby with two individuals and

sold crack-cocaine to one of them. (Tr. 265.) Petitioner and Bell confronted Hart and told him that he could not sell drugs at that location. (Tr. 266.) While Bell argued with Hart, petitioner left the building. (Tr. 266.) Petitioner returned approximately five minutes later with a gun and shot Hart twice, killing him. (Tr. 266.)

### 2. Facts Relating to Walter Williams' Testimony

On February 28, 1991, Williams provided the police with a statement, allegedly asserting that he had never worked for petitioner as a drug dealer, which was audio-taped and transcribed (hereinafter "the Williams transcript").[1] According to petitioner's trial counsel, Joel Medows ("Medows"), he visited the Kings County District Attorney's office (hereinafter "DA") and was permitted to listen to portions of the audiotape "that [P]eople decided to disclose." (Resp.'s Ex. H, Pet.'s 2002 Mot. to Renew Mot. to Vacate Judgment, Ex. A, Medows Aff. ¶ 4.) At least two pages of the transcript, pages 5 and 7, were disclosed to Medows, as indicated by his initialing of the pages. (Pet.'s Ex. 2 at 5, 7.) In Williams' audiotaped statement, as well as in his trial testimony, he stated that he had witnessed petitioner shoot the victim. (Pet.'s Ex. 2; Tr. 297-300.)

On March 7, 1991, a DA investigator conducted a polygraph exam of Williams, who passed the examination. (Resp.'s Ex. H, Twersky Aff. ¶ 4; Resp.'s Opp. Br. to Def.'s Mot. to Renew Mot. to Vacate Judgment, Ex. V, Williams' Polygraph Agreement & Summary.)

On January 29, 1996, in response to a Freedom of Information Law (hereinafter "FOIL") request from petitioner, the DA offered petitioner the opportunity to obtain copies of discovery materials and witness statements pertaining to his case. (Respondent's Ex. H, Pet.'s 2002 Mot. to Renew Mot. to Vacate Judgment, Ex. E, Jan. 29, 1996 FOIL Ltr.) The materials listed include a twelve-page "Audio Taped Statement (Williams)." *Id.*

On April 22, 1996, Williams provided, to a private investigator, a sworn audiotaped statement in which he allegedly recanted his previous trial testimony identifying petitioner as the person who had murdered the victim. (Resp.'s Ex. H, Twersky Aff. ¶ 15.)

On June 30, 2000, in response to a second FOIL request from petitioner, the DA provided him with "seven pages of notes believed to have been prepared by Assistant District Attorneys assigned to your case and relating to the witness Walter Williams." (Resp.'s Ex. H, Opp. Br. to Def.'s Mot. to Renew Mot. to Vacate Judgment, Ex. IV, Jun. 30, 2000 FOIL Ltr.)

On March 26, 2002, petitioner's current counsel, Damond Carter, spoke with Medows regarding the transcript of Williams' February 18, 1991 statement (hereinafter "the Williams transcript"). According to both attorneys, in the course of their conversation, they realized that Carter was in possession of a full twelve-page transcript, even though Medows had conducted the trial while in possession of only the two initialed pages. (Resp.'s Ex. H, Pet.'s 2002 Mot. to Renew Mot. to Vacate Judgment, Ex. A, Carter Aff. ¶ 9; Resp.'s Ex. H, Pet.'s 2002 Mot. to Renew Mot. to Vacate

---

[1] This statement conflicted with Williams' later testimony at trial that he had been selling drugs for Shuler at the time of the alleged crime. (Tr. 275-77.)

2

Judgment, Ex. A, Medows Aff. ¶ 5.) According to Medows, these two pages did not possess Williams' denial that he had sold drugs for petitioner, and Medows did not hear Williams make such a statement in the portions of the audiotape that he was permitted to listen to when he met with the DA. (Resp.'s Ex. H, Pet.'s 2002 Mot. to Renew Mot. to Vacate Judgment, Ex. A, Medows Aff. ¶¶ 3-5.)

B. Procedural History

1. Conviction and Sentencing

Shuler was charged in the Supreme Court of the State of New York, Kings County, with one count of murder in the second degree (N.Y. Penal Law § 125.25[1]), one count of criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03), and one count of criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02[4]). (Tr. 25.) After a jury trial, in which Williams testified that he witnessed Shuler shoot the victim, Shuler was found guilty of murder in the second degree and criminal possession of a weapon in the second degree. (Tr. 697.) On June 15, 1993, Shuler was sentenced to concurrent prison terms of twenty years to life on the murder count and two to six years on the weapon possession count. (Resp.'s Ex. A, Tr. of Sentencing at 12-13, *People v. Shuler*, Ind. Nos. 2770/91, 5062/89 (N.Y. Sup. Ct. Jun. 15, 1993)).

2. 1994 Motion to Vacate

On May 17, 1994, petitioner moved to vacate his judgment of conviction in the New York Supreme Court, Kings County, pursuant to N.Y. Crim. Proc. Law § 440.10. He raised the following claims: (1) that he was denied his constitutional right to confront a hostile witness when Williams, invoked his Fifth Amendment right against self-incrimination while testifying with regard to certain questions; (2) the prosecution committed prosecutorial misconduct and a violation pursuant to *People v. Rosario*, 9 N.Y.2d 286 (N.Y. 1961), by failing to disclose that Williams would testify regarding his knowledge of certain prior bad acts of petitioner; and (3) the prosecution committed a violation pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), by failing to disclose an alleged cooperation agreement with Williams. (Resp.'s Ex. B [Pet.'s Br./Aff. in Support of Mot. for Vacatur of Judgment].) By order dated November 18, 1994, the New York Supreme Court summarily denied Shuler's motion. *People v. Shuler*, Ind. No. 2770/91 at 5 (N.Y. Sup. Ct. Nov. 18, 1994).

Shuler appealed his judgment of conviction directly to the Appellate Division, Second Department. *People v. Shuler*, 656 N.Y.S.2d 665 (N.Y. App. Div. 1997). He raised the following claims: (1) the trial court improperly admitted evidence of his uncharged prior bad acts; (2) the prosecution had improperly impeached its own witness, Clyde Daniels, with prior unsworn statements; and (3) the prosecution's summation was prejudicial to defendant and denied him his right to a fair trial. *Id.* at 528. On April 21, 1997, the Appellate Division unanimously affirmed Shuler's conviction. *Id.*

By letter dated May 17, 1997, petitioner, acting *pro se*, sought leave to appeal to the New York Court of Appeals from the Appellate Division's April 21, 1997 decision. The Court of Appeals summarily denied leave to appeal on August 22, 1997. *People v. Shuler*, 686 N.E.2d 234 (N.Y. 1997).

### 3. 1997 Motion to Vacate

On June 5, 1997, Shuler made a second motion to vacate and to set aside his sentence on the basis of Williams' recantation, pursuant to New York Criminal Procedure Laws §§ 440.10(1)(g) and 440.20(1). The trial court denied Shuler's motion on October 23, 1997. *People v. Shuler*, Ind. No. 2770-91 (N.Y. Sup. Ct. Oct. 23, 1997).

### 4. 1998 Motion to Vacate

On October 7, 1998, petitioner moved *pro se* for an order vacating his judgment of conviction, pursuant to N.Y. C.P.L. § 440.10. The trial court denied Shuler's motion by opinion dated July 2, 1999. *People v. Shuler*, Ind. No. 2770/91 (N.Y. Sup. Ct. Jul. 2, 1999). The Appellate Division denied petitioner's subsequent application for leave to appeal on April 20, 2000. *People v. Shuler*, No. 1999-08388 (N.Y. App. Div. Apr. 20, 2000).

### 5. Motion for a Writ of Error *Coram Nobis*

Shuler then applied to the Appellate Division, Second Department, for a writ of error *coram nobis* vacating (1) the April 21, 1997 order affirming his conviction; (2) the November 18, 1994 order denying petitioner's motion to vacate his conviction; and (3) the June 15, 1993 sentencing order. In his moving papers, petitioner alleged ineffective assistance of appellate counsel. The Appellate Division denied petitioner's request for a writ of error *coram nobis* on October 30, 2000. *People v. Shuler*, 717 N.Y.S.2d 885 (N.Y. App. Div. 2000).

### 6. First Motion to Renew 1994 Motion to Vacate

On October 19, 2001, Shuler, represented by counsel, sought to renew his initial May 17, 1994 motion to vacate judgment in the New York Supreme Court. The trial court denied Shuler's motion. *People v. Shuler*, Ind. No. 2770/91 (N.Y. Sup. Ct. Feb. 13, 2002). The Appellate Division denied petitioner leave to appeal the trial court's order on July 30, 2002. *People v. Shuler*, No. 2002-2921 (N.Y. App. Div. Jul. 30, 2002). On October 23, 2002, the New York Court of Appeals denied leave to appeal. *People v. Shuler*, 781 N.E.2d 924 (N.Y. 2002).

### 7. Second Motion to Renew 1994 Motion to Vacate

On June 4, 2002, Shuler, represented by counsel, again moved in the New York Supreme Court to renew his May 17, 1994 motion to vacate judgment. By decision dated July 11, 2003, the New York Supreme Court denied Shuler's motion to renew. *People v. Shuler*, Ind. No. 2770/91 (N.Y. Sup. Ct. Jul. 11, 2003). The Court concluded by stating, "Mr. Shuler needs to come to terms with his unwillingness to accept the jury's verdict . . . as there is simply no basis in or *dehors* the trial record to support any of the points he repeatedly attempts to raise." *Id*. at 4. On February 19, 2004, the Appellate Division denied Shuler's application for leave to appeal the New York Supreme Court's decision. *People v. Shuler*, No. 2003-7275 (N.Y. App. Div. Feb. 19, 2004).

On February 17, 2005, Shuler petitioned this Court for a writ of habeas corpus.

## II. DISCUSSION

### A. Timeliness

The State argues that the petition should be dismissed because Shuler failed to file within the applicable statute of limitations. For the reasons set forth below, this Court agrees.

#### 1. Statute of Limitations

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No 104-132, 110 Stat. 1214. which, among other things, amended 28 U.S.C. § 2244(d)(1) to provide a one-year limitation period for filing a petition for a writ of habeas corpus by a person in state custody pursuant to a state court judgment. The statute provides that the limitation period will run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). In most cases, the start date of the limitations period is the date of final conviction under § 2244(d)(1)(A). Petitioner's conviction became final on November 21, 1997, ninety days after the New York Court of Appeals denied his request for leave to appeal. *See Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998) (judgment of conviction becomes final for AEDPA purposes when time to seek direct review in the United States Supreme Court expires); *Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (judgment of conviction becomes final ninety days after the date the Court of Appeals denies leave to appeal for cases where direct review by the United States Supreme Court is not sought). Therefore, under 28 U.S.C. § 2244(d)(1)(A), petitioner generally would have one year from this date to file his habeas petition, excluding any time during which the limitations period is statutorily tolled under § 2244(d)(2).

However, petitioner asserts that, pursuant to 28 U.S.C. § 2244(d)(1)(D), this Court should apply the statute of limitations only as of the "factual predicate" date of March 26, 2002, which would make his claims timely. Under Section 2244(d)(1)(D), the statute of limitations begins to run from the date "when 'the facts supporting the claim or claims presented *could have* been discovered through the exercise of due diligence.'" *Wims v. United States*, 225 F.3d 186, 188 (2d Cir. 2000) (emphasis in original) (quoting 28 U.S.C. § 2255, which sets forth the factual predicate basis for determining the statute of limitations in cases involving petitioners seeking habeas relief from federal custody). Moreover, "[Section] 2244(d)(1)(D) can only

5

apply to a claim for which the factual predicate is neither known nor reasonably discoverable at the time the petitioner's judgment of conviction becomes final." *Yekimoff v. N.Y. State Div. of Parole*, No. 02 CV 8710 (BSJ) (DF), 2004 U.S. Dist. LEXIS 12767, at *12 (S.D.N.Y. Jul. 8, 2004). Therefore, in order for this Court to apply the factual predicate rule, petitioner must demonstrate that facts underlying his habeas claims were not discoverable through due diligence prior to November 21, 1997. For the reasons that follow, the Court finds that petitioner had ample evidence of the facts underlying both of petitioner's habeas claims at trial, and thus, such facts were discoverable well before his date of final conviction. Accordingly, Section 2244(d)(1)(D) is not applicable to petitioner's claims. Moreover, petitioner's claims are also untimely under Section 2244(d)(1)(A).

2. Section 2244(d)(1)(D)

a. Suppression Claim

According to petitioner, he first learned of the facts supporting his first claim for habeas relief, on the ground of unlawful suppression of evidence by the State, on March 26, 2002. Petitioner avers that on this date, appellate counsel and trial counsel engaged in a discussion regarding the transcript of Williams' February 18, 1991 statement to the police. During the conversation, the attorneys allegedly realized that, while appellate counsel had received a full twelve-page transcript of Williams' statement, trial counsel believed that the transcript consisted of only two pages. (Pet's Br., Ex. 5, Carter Decl. ¶ 14.) Petitioner argues that his trial counsel only received two of the twelve pages because the State had suppressed the full transcript and audiotape recording of Williams' interview.

Furthermore, petitioner alleges that he was prejudiced by such suppression because the two pages that Shuler's trial counsel received did not include the portion of the interview during which Williams denied working for Shuler. Therefore, petitioner's trial counsel was not able to impeach Williams at trial with his prior inconsistent statement. According to petitioner, it was not until the March 26, 2002 conversation between his trial and appellate counsel that he became aware of the possibility that the State may have suppressed evidence that could have been helpful to his defense at trial.

The Second Circuit has held that "[t]he proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered" that additional transcript pages existed. *Wims*, 225 F.3d at 190. In this instance, the information gleaned by counsel during the March 26, 2002 conversation – namely, that trial counsel had based his representation of petitioner on only a limited portion of Williams' transcribed statement – was discoverable at the time of petitioner's trial. Medows admitted that he had reviewed two non-consecutive pages of the transcript, which he also initialed at the time of disclosure, and that he listened to at least some portions of the audiotape. Thus, if, in fact, Medows was provided with only pages 5 and 7 of the transcript (which were numbered "5" and "7") during petitioner's trial, he should have been aware that he had only a limited portion of the transcript.[2] At that time,

---

[2] For this reason, petitioner's assertion that only pages 5 and 7 of the Williams transcript were provided to Medows is not credible. It is far more likely that, as the State explained before the state court, Medows was provided with the full transcript, which he reviewed in tandem with the

Medows could have requested the missing portions of the transcript or the full audio tape; alternatively, he could have expressed his concern that the State was attempting to unlawfully suppress Williams' full statement. The fact that trial counsel came to this realization nearly a decade after petitioner's conviction, as a result of discussing the transcript with appellate counsel, does not make the prior evidence that he had received only portions of the transcript "newly discovered" for purposes of the AEDPA statute of limitations:

> Newly discovered evidence is, by definition, incapable of discovery through counsel's due diligence before or during trial. . . . Evidence in existence at an earlier date, though perhaps unknown to a petitioner, cannot later be described as newly discovered.

*Hector v. Greiner,* No. 99-CV-7863 (FB), 2000 U.S. Dist. LEXIS 12679, at * 5 (E.D.N.Y. Aug. 29, 2000); *see also United States v. Middlemiss*, 217 F.3d 112, 122 (2d. Cir 2000) ("Relevant factors to a successful motion [based on newly discovered evidence] are whether . . . counsel could not have discovered the evidence with due diligence

---

audiotape during a meeting with an Assistant DA. During the meeting, both attorneys appear to have agreed upon corrections made to the Williams transcript on pages 5 and 7, as indicated by both of their initials on these pages. This theory is further supported by the fact that, only months after his trial concluded, petitioner was in possession of two pages which were not the ones initialed by his trial counsel, suggesting that petitioner's trial counsel had possessed the full Williams transcript all along and passed the transcript on to petitioner at some point following the trial.

before or during trial.").

Even if this Court accepts as true Medows' assertion that he was not aware of the additional transcript pages until 2002, the record indicates that additional pages were disclosed to petitioner before May 17, 1994. On that date, petitioner filed a *pro se* motion to vacate his conviction and attached two pages – which were *not* numbered 5 or 7 – to his motion papers. (Resp.'s Ex. B, Pet.'s Br./Aff. in Support of Mot. to Vacate, Ex. 1.) In addition, the record shows that petitioner was in possession of the entire transcript before October 19, 2001, when he filed a motion to renew his 1994 motion to vacate, and attached the entire twelve-page Williams transcript as an exhibit. *Id.* Petitioner also identified the transcript as a part of "all material disclosed by people at trial," a statement which he now claims was incorrect. (*Id.* at 2; Pet.'s Br., Ex. 5, Carter Decl. ¶¶ 10-12).

Based upon the record below, the Court finds that (1) Medows should have known *during trial*, by the exercise of due diligence, that there were additional transcript pages which might contain exculpatory or impeachment evidence, and (2) the petitioner himself was aware that additional transcript pages existed before May 17, 1994, only a few months after his sentencing. Petitioner's current effort to allege that it was not until March 26, 2002, that he could have learned that pages 5 and 7 of the Williams transcript did not represent Williams' full statement to the police, is thus belied by the record. Therefore, under Section 2244(d)(1)(D), the latest date on which petitioner could have discovered the "factual predicate" for his claim of alleged suppression was *prior to* the date on which his conviction became final, and Shuler's petition for habeas relief on this

7

basis is untimely.

b. Ineffective Counsel Claim

For the same reasons that this Court finds that Section 2244(d)(1)(D) does not apply to petitioner's suppression claim, the Court also concludes that this section does not apply to petitioner's claim of ineffective assistance of trial counsel. Petitioner argues that his trial counsel was ineffective for failing to use the missing pages of the Williams transcript to challenge Williams' credibility at trial. According to petitioner, he could not have learned of his trial counsel's ineffective assistance until March 26, 2002. However, this argument is without merit.

Petitioner was aware, based upon Williams' trial testimony during his direct examination, that Williams had provided a statement to the police and spoke with an Assistant DA on February 28, 1991. (Tr. 302.) Petitioner was also aware that, during his trial counsel's cross-examination of Williams, counsel did not question Williams as to the content of his earlier statements to the police. (Tr. 310-38.) At trial, petitioner, upon hearing the questioning, could have believed, based on this omission, that his counsel had been ineffective. Moreover, as explained *supra*, as early as May 17, 1994, petitioner was in possession of two uninitialed pages of the Williams transcript, one of which contained Williams' prior inconsistent statement that he had not sold drugs for petitioner. Thus, at that time, petitioner should have been aware that Medows had failed to question Williams at trial regarding his police statement; moreover, once armed with one of Williams' prior inconsistent statements, he knew that his trial counsel had either failed to obtain this statement or to use it for impeachment purposes at trial. Nevertheless, petitioner failed to pursue this claim between May 17, 1994 and the March 26, 2002 conversation. *See, e.g., Hector v. Grenier*, No. 99-CV-7863 (FB), 2000 U.S. Dist. LEXIS 12679, at *4-*5 (E.D.N.Y. Aug. 29, 2000) (rejecting petitioner's claim of "newly discovered" evidence in support of his habeas petition where "the evidence he alleges was newly discovered in 1998, giving rise to his ineffective assistance claim, was in existence and available to him before, during and immediately after his trial" and petitioner "was, therefore, 'on notice of the facts which would support his claim' as of 1985") (quoting *Lucidore v. New York State Div. of Parole*, No. 99-CV-2936 (AJP), 1999 U.S. Dist. LEXIS 11788, at *19 (S.D.N.Y. Aug. 3, 1999)). That is, during petitioner's numerous motions in the state courts prior to March 26, 2002, petitioner acted both in a *pro se* capacity and while represented by able counsel; yet, he still neglected to raise this issue. *See e.g., U.S. v. Pollard,* 161 F. Supp. 2d 1, 12 (D.D.C. 2001) ("Defendant's extensive legal representation undermines his theory that the alleged deception of the government . . . prevented him from discovering these facts and exercising due diligence."). He may not now resuscitate the argument by reframing evidence that he has had for years as "newly discovered." Therefore, because the facts underlying petitioner's claim of ineffective assistance of trial counsel were discoverable before his conviction became final, his current petition for habeas relief on such basis is untimely.[3]

---

[3] Petitioner cites *Johnson v. U.S.*, 544 U.S. 295 (2005), in support of his timeliness argument. *Johnson* is inapplicable here. In *Johnson*, a federal prisoner challenged his state court sentence after obtaining a state court *vacatur* of prior convictions, thereby eliminating the basis for his current enhanced sentence. *Id.* at 300. The

Supreme Court held that the state court *vacatur* was a "fact" for purposes of § 2244(d)(1)(D). *Id*. at 302. However, the Supreme Court further held that the petitioner was not diligent in obtaining the state court *vacatur*, and therefore, his petition was untimely. *Id*.

Petitioner asserts that *Johnson* resets the start date of his one-year limitations period to February, 19, 2004, the date on which the state court denied his last motion to renew. (Pet.'s Br. at vi.) Petitioner would have the Court read *Johnson* to reset the statute of limitations period any time a federal habeas petitioner obtains a state court determination on the same claim upon which he petitions for habeas relief. However, under *Johnson*, where a state court judgment *is* itself the factual predicate for a federal habeas claim and the petitioner acted diligently in obtaining that state court decision, AEDPA's limitations period begins to run on the date of the state court's determination. *Johnson*, 544 U.S. at 302. In the instant petition, the state court decision denying Shuler's state suppression and ineffective assistance claims is a precondition to filing his federal claim only in terms of AEDPA's exhaustion requirement. It is not the factual predicate for petitioner's federal habeas claim. That the petitioner is required to exhaust his claims in state court before bringing his federal habeas petition is well settled and *Johnson* is inapplicable.

Furthermore, petitioner would have the Court read *Johnson* as removing the diligence requirement for the discovery of the new fact so long as petitioner acted diligently in pursuing state relief based on the new fact *once it has been discovered*. Petitioner appears to read *Johnson* as removing the diligence requirement from the discovery of the underlying facts, so long as petitioner acted diligently *after* actual discovery. The Supreme Court explicitly disavowed any such reading of *Johnson*:

> The dissent, like Johnson, would dispense with any due diligence requirement in seeking the state *vacatur* order itself, on the ground that the States can impose their own limitation periods on state collateral attacks, as most states do. . . . [W]here one "discovers" a fact that one has helped to generate…whether it be the result of a court proceeding or of some other process begun at the petitioner's behest, it does not strain logic to treat required diligence in the 'discovery' of that fact as entailing diligence in the steps necessary for the existence of the fact.

Because the grounds for both of petitioner's claims were discoverable prior to the date of his final conviction, 28 U.S.C. § 2244(d)(1)(D) does not apply. Accordingly, the Court now turns to whether the instant habeas petition is timely pursuant to § 2244(d)(1)(A).

*Id*. at 309-10. There is no indication that the Supreme Court intended to limit the diligence requirement to post-discovery actions. For example, *Johnson* rejects an interpretation of the due diligence requirement that would permit convicted criminals to delay ordering DNA tests in order to stretch out the time in which they could seek habeas review of their convictions, on the basis that the relevant factual predicate – the test results – were "discovered" after the expiration of the AEDPA statute of limitations. *Id*. at 310. Accordingly, under *Johnson*, the petitioner must act diligently both in discovering the new facts underlying his claim, and in pursuing state relief on the basis of those new facts. There is no indication that the Supreme Court intended to remove the diligence requirement for pre-discovery actions while explicitly mandating it for post-discovery actions.

9

### 3. Timeliness of Claims Under § 2244(d)(1)(A)

Petitioner's conviction became final on November 21, 1997. The Court notes that 2645 days (7 years, 2 months and 27 days) passed between the date that petitioner's conviction became final and the date on which he filed the instant petition. However, pursuant to 28 U.S.C. § 2244(d)(2), the Court excludes the pendency of petitioner's actions before state court. After excluding those periods during which the statute of limitations was tolled, the Court finds that the limitations period ran for a total of 718 days, making his claim untimely by 353 days.

The statute of limitations ran during two periods between November 21, 1997, petitioner's date of final conviction, and February 19, 2005, the filing date of the instant habeas petition. First, between the Appellate Division's October 30, 2000 denial of Shuler's petition for a writ of error *coram nobis* and his October 19, 2001 motion to renew his May 17, 1994 motion to vacate judgment, 354 days passed, leaving only eleven remaining days in the limitations period. The final state court adjudication of Shuler's claims was on February 19, 2004. *See People v. Shuler*, No. 2003-7275 (N.Y. App. Div. Feb. 19, 2004). Petitioner did not file the instant petition until 364 days later, on February 17, 2005 – which was an additional 353 days after petitioner's one-year statute of limitations expired. Therefore, the instant habeas petition is untimely under § 2244(d)(1)(A).

Where a petition is untimely, the Court may consider it only where petitioner is entitled to equitable tolling. *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir. 2000). *See also Pace v. DiGuglielmo*, 544 U.S. 408, 418 & n.8 (2005) (permitting equitable tolling where petitioner has been pursuing his rights diligently and faced extraordinary circumstances, and declining to address "the question whether equitable tolling is applicable to AEDPA's statute of limitations"). The Second Circuit has held that equitable tolling is only available in "rare and exceptional circumstances." *Smith*, 208 F.3d at 17. In order to obtain the benefit of equitable tolling, a petitioner must show: (1) that extraordinary circumstances prevented him from filing his petition on time; and (2) that he acted with reasonable diligence throughout the period he seeks to toll. *Id*. Petitioner has not demonstrated extraordinary circumstances causing him to delay the filing of the instant petition by nearly one year. Nor has petitioner shown that he acted with due diligence in filing this petition. Accordingly pursuant to the standard set forth in *Smith*, petitioner is not entitled to equitable tolling and his petition is dismissed as untimely.

### B. Petitioner's Constitutional Claims

Even assuming *arguendo* that the petition were timely, it lacks merit for the reasons set forth below.

### 1. Standard of Review

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by AEDPA, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State

court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

2. *Brady* Claim

a. Procedural Bar

As respondent notes, petitioner's claim that the State suppressed material exculpatory evidence in violation of *Brady* is procedurally barred from habeas review by this Court. "'Federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground.'" *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)). The court denied petitioner's motion to vacate on suppression grounds for the procedural reason that petitioner had the full transcript in his possession prior to filing his May 17, 1994 motion to vacate and did not include the suppression claim in his 1994 motion. *People v. Shuler*, Ind. No. 2770/91, at 2 (N.Y. Sup. Ct. Jul. 11, 2003). The Supreme Court found that petitioner's failure to raise the claim was "entirely attributable to the defense's lack of prior due diligence." *Id.* at 3. The Court held that, pursuant to N.Y. Crim. Proc. Law § 440.10(3)(c), a court may "deny a motion to vacate judgment when upon a previous motion made pursuant to this section, the

defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so." (*Id.* (citing N.Y. Crim. Proc. Law § 440.10)). Thus, in the absence of "cause-and-prejudice" for petitioner's failure to bring his suppression claim in 1994, which petitioner does not demonstrate, such claim is procedurally barred for purposes of habeas relief. However, even if petitioner's suppression claim were not procedurally barred, the Court finds the claim to be without merit for the reasons set forth below.

b. Merits

Petitioner argues that the State violated petitioner's rights under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by improperly suppressing Williams' prior inconsistent statements. Under *Brady*, the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U. S. at 87. "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Failure to disclose such material "merits relief only if the prosecution's failure 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678).

In order to demonstrate a *Brady* violation, "a defendant must show that: (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) (citing *Strickler*, 527 U.S. at 281-82). In this instance, petitioner asserts that the State improperly suppressed Williams' prior inconsistent statements, resulting in prejudice to petitioner.[4] Petitioner primarily contends that, by withholding all but pages 5 and 7 of the Williams transcript, petitioner's trial counsel was prevented from impeaching Williams at trial.[5] Even if

---

[4] To the extent that petitioner's instant suppression claim is based upon the State's alleged failure to provide petitioner with unidentified additional audiotaped statements by Williams, this claim is denied. Petitioner cannot assert a *Brady* claim on the basis of mere speculation that additional exculpatory or impeachment evidence exists. *See, e.g., Coppa*, 267 F.3d at 140; *Strickler*, 527 U.S. at 281-82.

[5] To the extent that petitioner's instant suppression claim is based upon the State's alleged failure to provide petitioner with (1) handwritten notes of the Williams interview, or (2) Williams' polygraph report, such claims are denied.

First, the New York Supreme Court has concluded, and this Court agrees, that the information contained in the handwritten notes disclosed to Shuler as a result of his 2000 FOIL request are duplicative of that in a summary of Williams' audiotaped statement as set forth in the Williams transcript, which was provided to Shuler at trial. *People v. Shuler*, Ind. No. 2770/91, at 9 (N.Y. Sup. Ct. Feb. 13, 2002) ("The statement merely reveals what was already disclosed in other sources; specifically, the audiotaped statement and the notes of the same which were turned over to the defense prior to trial."). As such statements do not provide any additional exculpatory or impeachment value under *Brady* than the transcript itself, the Court rejects any potential *Brady* claim with regard to the 2000 FOIL notes for the same reasons that the Court declines, *infra*,

petitioner's allegations of suppression by the State are true, petitioner has failed to demonstrate that he suffered prejudice from the State's alleged failure to provide trial counsel with the full transcript.

---

to find a *Brady* violation with regard to the transcript. Moreover, the Court agrees with the state court that, even when examined independently, the statements contained in the notes are not exculpatory and do not give rise to reasonable doubt. *Id.* Therefore, the Court finds that these materials fail to establish a *Brady* violation.

Second, with regard to the allegedly suppressed polygraph report, petitioner fails to allege, let alone demonstrate, in the instant case, how the information set forth in the report was exculpatory or could be use to impeach a witness. Based upon a review of the earlier record, petitioner's arguments regarding the polygraph report center around Williams' denial that he had shot the victim and Williams' denial that he had been involved in any way with the shooting. *See People v. Shuler*, Ind. No. 2770/91, at 4 (N.Y. Sup. Ct. Feb. 13, 2002). Neither of these statements are exculpatory. Furthermore, the Court agrees with the respondent's argument below that "there was nothing contained in the report, including defendant's own description of the crime, that significantly contradicted or was inconsistent on any crucial matter with the witness' trial testimony." *Id.* at 4; *see also People v. Shuler*, Ind. No. 2770/91, at 4 (N.Y. Sup. Ct. Feb. 13, 2002) ("[I]nasmuch as Mr. Williams' statement was merely a denial of any involvement in the shooting, the disclosure can only be relegated to harmless error assessment.").

Therefore, for the reasons set forth above, with respect to the FOIL 2000 notes and the polygraph report, the Court finds that the state court did not err in finding that a *Brady* violation had not been committed.

In the transcribed statement, Williams alleges that he saw petitioner get into an argument with the victim in the lobby of 30 Debevoise Avenue, saw him leave the area for "five or six minutes," then saw petitioner return and pull a gun from his right pocket before shooting the victim while standing behind him on a staircase inside the building lobby. (Pet.'s Ex. 2.) Such statements are clearly not exculpatory and in no way indicate petitioner's innocence of the charged crimes. Petitioner contends that, because Williams denied working for petitioner in his audiotaped statement, but admitted to doing so during his trial testimony, the Williams transcript could have been used by petitioner for impeachment purposes. *See Bagley*, 473 U.S. at 676 (holding that both impeachment evidence and exculpatory evidence fall under the *Brady* rule). Yet, while both impeachment evidence and exculpatory evidence fall under the *Brady* rule, petitioner must show not only that the transcript could have been used at trial to impeach Williams, but must demonstrate that the transcript "'could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *U.S. v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (quoting *Kyles*, 514 U.S. at 435) (additional citations omitted).

In the instant case, the Court concludes that the allegedly suppressed impeachment material would not have shed reasonable doubt on petitioner's guilt in the context of (1) testimony by three witnesses – Williams, Daniels and Smith – that the victim had sold drugs in front of petitioner and that this transaction had caused an argument involving the victim, petitioner, and Walter Bell; and (2) Williams' testimony as to the manner in which petitioner shot at the victim, evidence that was found to be consistent with the

13

testimony of three witnesses, including a medical examiner, a police officer, and Kisha Ballard, who heard the gunshots, looked out of her window, and saw petitioner entering his own apartment building, and observed Williams, Bell and Daniels running out of 30 Debevoise Avenue. *People v. Shuler*, Ind. No. 2770/91, at 4-5, 9 (N.Y. Sup. Ct. Feb. 13, 2002). Therefore, in light of the fact that "[t]he bottom line is that the jury could have reached its verdict as to Mr. Shuler's guilt by the direct and/or circumstantial evidence of the shooting occurrence presented at trial," the Court finds that petitioner has not met his burden of showing that the absence of the allegedly suppressed evidence should undermine this Court's confidence in the jury verdict. *Id.* at 9. Accordingly, as a result of petitioner's failure to show that the nondisclosure of the transcript was prejudicial to petitioner, this Court declines to find that a *Brady* violation was committed by the State. *Strickler*, 527 U.S. at 281 ("[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."). Thus, because petitioner's *Brady* claim is meritless, the state court did not err in failing to grant relief to petitioner on this basis.

3. Ineffective Assistance of Trial Counsel Claim

a. Exhaustion

Petitioner's habeas petition also asserts that the ineffectiveness of petitioner's trial counsel provides an independent ground for habeas relief. However, respondent contends that petitioner's ineffective assistance claim was not exhausted before the state courts. Prior to bringing a petition for habeas corpus relief in federal court, a petitioner must present each of his habeas claims during his state court appeals. *Jones v. Keane*, 329 F.3d 290, 294 (2003). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Id.* at 295 (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). Therefore, the claims presented in petitioner's federal habeas petition must be the "substantial equivalent" of the claims raised in state court. *Id.*

In this case, respondent argues that, "[a]lthough defendant raised a claim in his October 7,1998 motion to vacate judgment, that his trial counsel was ineffective for, among other reasons, failing to take a statement from Williams, he did not assert, as he does now, that counsel had failed to use Williams' allegedly 'perjurious and inconsistent' statements." (Resp.'s Br., at 15-16.) According to petitioner, he presented his ineffectiveness claim on appeal, but "the state courts . . . failed to address Petitioner's claim of ineffectiveness in its entirety." (Pet.'s Br., at 25.)

i. Failure to Use the Williams Transcript

The Court finds that, inasmuch as petitioner's claim rests upon trial counsel's failure to use the Williams transcript, a fact of which petitioner allegedly was not aware until March 26, 2002, this claim was not presented to the New York Supreme Court in petitioner's 2002 motion to renew his 1994 motion to vacate. (*See* Resp.'s Ex. H, Def.'s Br. in Support of Mot. to Renew Mot. to Vacate Judgment of Conviction.) However, it was raised previously in petitioner's *coram nobis* application to the New York Supreme Court. (Resp.'s Ex. F, Def.'s Mem. of Law in

Support of Writ of Error *Coram Nobis*.) Petitioner argued that

> Defense counsel had to know of the prior audio-taped statement . . . [I]n spite of evidence which contradicted Walter Williams, defense counsel did not to [sic] impeach him at trial, nor have the indictment dismissed at the pre-trial stage. Here, it is abundantly clear that at some point, prior to the rendition of the jury's verdict, defense counsel was aware that Walter Williams was lying and that the indictment was based upon perjured testimony, yet failed to take corrective action.

(*Id.*, at 13.) The Appellate Division rejected petitioner's argument, holding that "appellant has failed to establish that he was denied the effective assistance of appellate counsel." *People v. Shuler*, (Oct. 20, 2000). This indicates that petitioner did exhaust such claim before the state courts. However, the underlying premise of petitioner's statement – that trial counsel was aware of the Williams transcript during trial – makes any current habeas claim on such basis untimely; therefore, any such claim is barred from habeas review for the reasons set forth *supra*. In any event, even if this claim were timely, the Court finds petitioner's claim of ineffective assistance on this basis to be without merit for the reasons set forth *infra*, at section II(B)(2)(c).

ii. Failure to Use Other Prior Inconsistent Statements

Likewise, with regard to petitioner's argument that his trial counsel was ineffective in failing to use other prior inconsistent statements by Williams, the Court finds such a claim to be exhausted. In petitioner's 2001 motion to vacate – which primarily claimed, under *Brady* and *Rosario*, that the State had suppressed (1) notes of an interview with Williams and (2) the Williams polygraph report, which were brought to light as a result of Shuler's FOIL request in 2000 – petitioner argued that, if the court were to reach the conclusion that trial counsel had actually possessed these materials and simply failed to use them at trial, then petitioner would have an equally valid claim of ineffective assistance of trial counsel. (*See* Resp.'s Ex. G [Def.'s Br. in Support of Mot. to Renew Mot. to Vacate Conviction], at 61-62.) At the time, petitioner conceded that the State had disclosed the Williams transcript to Medows during discovery; therefore, Shuler's "conditional" ineffective assistance claim was based solely on Medows' failure to use ADA Keogh's notes and the polygraph report as exculpatory or impeachment evidence. The court reached its decision denying petitioner's motion on the basis that, even if such material were withheld in violation of *Rosario*, the suppression constituted harmless error. *People v. Shuler*, Ind. No. 2770/91, at 8-9 (N.Y. Sup. Ct. Feb. 13, 2002). With regard to the *Brady* analysis, the court found that the allegedly suppressed statements were not material: "[the suppressed material] does not, in and of itself, compellingly point to Mr. Shuler's innocence, much less give rise to reasonable doubt, such that it could be construed to have been capable of changing the trial's outcome had the jury been apprised of its existence." *Id.*, at 9. Therefore, the court assumed that petitioner's trial counsel did not have the allegedly suppressed documents at trial, and did not reach the issue of whether petitioner's trial counsel had been ineffective in failing to use the statements. To the extent that petitioner re-asserts this claim for ineffective assistance of counsel with

15

regard to these statements, even if the Court deems this claim exhausted for habeas purposes, this claim is without merit. Respondent conceded below that petitioner had not been provided with the notes or the polygraph report until after petitioner's 2000 FOIL request. *See id.*, at 3-4. Therefore, there is no basis for a claim of ineffective assistance on grounds that petitioner's trial counsel failed to use such materials, and habeas relief on such ground is denied.

b. Procedural Bar

Petitioner also argues that his ineffective assistance claim on the basis of the "newly discovered" Williams transcript should not be considered procedurally barred, because the Appellate Division's February 13, 2002 decision "made no reference to Shuler's effectiveness claim." (Pet.'s Br., at 33.) Petitioner contends that "no AEDPA deference is given, because this Court cannot say that the state courts' decisions were on the merits." (*Id.*) Where a "federal claim has not been adjudicated on the merits, AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*." *Spears v. Grenier*, 459 F.3d 200, 203 (2d Cir. 2006) (citing *DeBerry v. Portuondo*, 403 F.3d 57, 66-67 (2d Cir. 2005)). As in *Spears*, where the Appellate Division's opinion made no mention of petitioner's *Allen v. United States*, 164 U.S. 492 (1896), claim below, petitioner's ineffective assistance claim was not mentioned in its decision, and the state court "gave no indication that it had considered or disposed of" the argument. *Id.* at 204. This Court, like the Second Circuit in *Spears*, finds that "[i]t is unnecessary in this case to decide whether to afford AEDPA deference to the decision of the Appellate Division because, even applying a *de novo*

review standard, we find that the petitioner has failed to establish any violation of federal law." *Id.* (citing *Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying *de novo* standard to part of a federal claim not reached by the state court), and *Boyette v. Lefevre*, 246 F.3d 76, 91 (2d Cir. 2001) (same)).

c. Merits

Under *Strickland v. Washington*, 466 U.S. 668, 694 (1984), a petitioner seeking habeas relief on the basis of ineffective assistance of trial counsel must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." "A court need not decide both prongs of the Strickland test for ineffective assistance of counsel if a party has made an insufficient showing on one." *Edmonson v. Artus*, No. 04-CV-5477 (ARR), 2006 WL 3486769, at *13 (E.D.N.Y. Nov. 30, 2006) (citing *Strickland*, 466 U.S. at 697).

Generally, when reviewing counsel's performance, courts "indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance." *Id.* at 689. As the Court explained in *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. Petitioner argues that, if this Court finds that Medows was in possession of the Williams transcript, then he necessarily was ineffective in failing to use it to impeach Williams at trial.[6] (Pet.'s

---

[6] First, this Court has made no findings of fact as to whether Medows was in possession of the Williams transcript during petitioner's trial.

16

Br. at 40.)

Furthermore, the Court finds this claim to be without merit. Petitioner argues that trial counsel should have pointed out to the jury that Williams' statement at trial – that he had sold drugs for Shuler – plainly contradicted his prior statement in the transcript that he had not. (Pet.'s Br. at 41.) Petitioner also argues that Williams' alleged perjury at trial regarding this statement indicates that he may have committed perjury with regard to his eyewitness account of Shuler shooting the victim. (*Id.* at 42.) Therefore, according to petitioner, "the jury retired into deliberation with an inaccurate perception of the weight of the evidence against Shuler." (*Id.* at 41.)

While "use of [the prior statement] as impeachment material might have been useful, trial counsel's failure to impeach [Williams] on this basis did not constitute ineffective assistance of counsel." *Edmonson*, 2006 WL 3486769, at *14. Moreover, "'[d]ecisions about whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature and generally will not support an ineffective assistance claim.'" *Id.* (quoting *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002)). Thus, impeachment of Williams with regard to his statement that he had worked for petitioner would not have voided his other statements, which consistently provided similar accounts of Shuler's shooting of the victim, and which were corroborated by additional witness testimony. Even if Williams were to have admitted at trial that he had lied about working for petitioner, he provided sufficient details of Shuler's drug activity, his argument with the victim, and the shooting, for the jury to have still found Shuler guilty of murder.

Therefore, because this Court cannot find that trial counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," petitioner's request for habeas relief on this basis is denied. *Strickland*, 466 U.S. at 686.

In sum, even assuming *arguendo* that petitioner's claims were timely, the Court concludes that the claims are without merit because the state court decisions on all of the issues raised by petitioner were not contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the habeas petition must be denied.

---

Second, if Medows did have access to the Williams transcript during trial, then petitioner's current claim for habeas relief on this basis is untimely, for the reasons set forth *supra*.

III. CONCLUSION

For the foregoing reasons, Schuler's petition for a writ of habeas corpus is DENIED. Because Schuler has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 13, 2007
Central Islip, New York

\* \* \*

The attorney for petitioner is Damond J. Carter, Esq., Law Office of Damond J. Carter, PLLC, P.O. Box 6365, Albany, New York 12203. The attorney for respondent is Charles J. Hynes, Kings County District Attorney, by Joseph Huttler, Esq., Sholom J. Twersky, Esq., and Leonard Joblove, Esq., Kings County District Attorney's Office, 350 Jay Street, Brooklyn, New York 11201.